**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4133

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DEVELL LINCOLN, a/k/a Clarence Taylor, a/k/a Caly Roth, a/k/a Lavelle Lincoln,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, Senior District Judge. (8:17−cv−00466−PWG–1)

Submitted: October 5, 2022                    Decided: November 9, 2023

Before NIEMEYER and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Brian L. Stekloff, Jackie Delligatti, Anastasia M. Pastan, WILKINSON STEKLOFF LLP, Washington, D.C., for Appellant. Erek L. Barron, United States Attorney, Baltimore, Maryland, Jessica C. Collins, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Devell Lincoln argues that he was denied his right to have an impartial jury decide his criminal trial. *See* U.S Const. amend. VI. The district court disagreed and denied Lincoln's motion for a mistrial. We affirm.

Lincoln was charged with filing false federal tax returns and then cashing the ill-gotten tax-refund checks.[1] He elected to go to trial. Jury selection began in July 2021, but given the COVID-19 pandemic, voir dire proceeded with certain exposure-reducing protocols. The venire was kept in a jury assembly room. A few venire members at a time were taken to an area outside the courtroom. Then, individual venire members were brought into the courtroom for questioning.

When the first group—which included just two members of the venire—was taken to the area outside the courtroom, an agent from the United States Department of the Treasury was also standing there. The agent, who had been involved with Lincoln's case, briefly spoke to the venire members. He introduced himself and asked their names. A courtroom deputy saw the exchange and told the court. Concerned, the court questioned the agent on the record. The agent admitted that he identified himself to the venire members but claimed that he "thought they were witnesses on [the government's] behalf," and that the exchange lasted "[l]ess than 30 seconds." J.A. 115, 117. Defense counsel then

---

[1] To be specific, Lincoln was charged with (1) one count of conspiracy to commit theft of public money, 18 U.S.C. § 371; (2) four counts of theft of public money, 18 U.S.C. § 641; and (3) four counts of aggravated identity theft, 18 U.S.C. § 1028A. Before trial, the district court granted the government's motion to dismiss one count each of theft of public money and aggravated identity theft. [J.A. 58.]

2

questioned the agent. Following the questioning, Lincoln moved—unopposed—to strike the venire members. The district court granted the motion. After granting the motion, to "confirm" what happened, the district court summoned one of the excused venire members for questioning. J.A. 120. The venire member's testimony matched the agent's testimony.

Voir dire continued and a jury was empaneled. At that time, the court asked Lincoln whether he "s[aw] any issues" with the jury selection. J.A. 319. He didn't. So the trial started. At the close of the government's case-in-chief, Lincoln moved for a mistrial based on the agent's communication with the excused venire members. The district court noted that while the agent's conduct was "improper," it was "narrowly confined to those two individual juror candidates," J.A. 848, who had been excused "immediately," J.A. 844. Therefore, finding no basis to conclude "the jurors who were selected … had been exposed to any conduct that would … raise an issue about whether they would be fair and impartial," the court denied the motion. J.A. 850–851. Lincoln was convicted on all counts.

Lincoln appeals from the district court's order denying his motion for a mistrial. He argues that the agent's contact with the two members of the venire disturbed his right to an impartial jury. We disagree.

The Sixth Amendment guarantees that a criminal defendant receives a speedy, public trial before an impartial jury. U.S. Const. amend. VI. To protect this right, "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). The problem for Lincoln is there was no contact with a *juror*. There was contact with venire members. And, even if the contact

with the venire members had been with seated jurors, "innocuous" communications aren't enough. *See United States v. Elbaz*, 52 F.4th 593, 606 (4th Cir. 2022) (citing *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir. 1996)). In this case, it's difficult to view the agent's thirty-second communication as anything more than "innocuous."

Further, the presumption is rebuttable. The presumption is rebutted where "there is no reasonable possibility that the verdict was influenced by the communication." *Elbaz*, 52 F.4th at 607. Here, the contacted members of the venire were immediately excused and never sat on the jury nor participated in jury deliberations. So its hard to see how the communication had any chance of influencing the verdict, let alone a "reasonable possibility."

Lincoln himself acknowledges that his case doesn't present a *Remmer* issue. He even describes the district court's resolution of the issue as "reasonable." *See* Appellant's Br. at 10. Yet Lincoln still argues that the agent's contact "ultimately led to an unfair and unconstitutional deliberative process." *Id.* First, he argues that it is "entirely possible" that the seated jurors witnessed the interaction. *Id.* at 11. Second, he argues that—even if the seated jurors didn't witness the interaction—it is "entirely possible" that the excused venire members told the seated jurors about the interaction. *Id.* And, third, he argues "there is some reason to believe" that the government agent intended to interfere in the voir dire process. *Id.* That reason being: the two excused members did not match the physical appearance of any government witness.

These arguments are unpersuasive. The first two are little more than speculation. But to trigger a presumption of prejudice, the defendant bears the burden of "establishing

4

both that an unauthorized contact was made, and that the contact was of such a character as to reasonably draw into question the integrity of the trial proceedings." *United States v. Baptise*, 596 F.3d 214, 221 (4th Cir. 2010) (cleaned up).  Lincoln's arguments about "possible" events don't discharge his burden.  *Cf. Elbaz*, 52 F.4th at 608 (rejecting an argument that the court should "speculate" that contact with an excused jury member "contaminated" the remaining jury members).  And, contrary to Lincoln's "speculation," "judicial questioning ensured no other jurors had heard outside information."  *Id.* at 607.  His third argument is little better.  The district court assessed the agent's credibility and flatly rejected the suggestion that the agent was acting nefariously.  *See* J.A. 848 (describing the agent's conduct as "boneheaded," but finding that it did not evince "any intent to try to interfere with the [jury-selection] process.").

In short, there "is no reasonable possibility that the verdict was influenced by the communication."  *Elbaz*, 52 F.4th at 607.  Therefore, the district court's order denying Lincoln's motion for a mistrial is

*AFFIRMED.*

5